**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

| | | |
|---|---|---|
| **JANE DOE,** | : | |
| **Plaintiff,** | : | **Case No. 2025-CAB-5512** |
| | : | |
| **v.** | : | |
| | : | |
| **AMERICAN FEDERATION OF STATE,** | : | **NEXT EVENT:** |
| **COUNTY AND MUNICIPAL EMPLOYEES** | : | **To be Scheduled** |
| **Defendant.** | : | |

## ORDER GRANTING MOTION TO PROCEED UNDER PSEUDONYM

Upon consideration of Plaintiff's Motion for Leave of Court to Proceed Under

Pseudonym "Jane Doe", filed August 19, 2025, the Court finds that Plaintiff has provided an

adequate basis for the Court to permit her to  proceed under pseudonym and grants Plaintiff's

Motion.

**THEREFORE**, it is this 2nd day of October 2025, hereby:

**ORDERED** that Plaintiff's Motion is **GRANTED**; and it is further

**ORDERED** that Plaintiff must file copies of the complaint and motions for preliminary

injunction using the pseudonym "Jane Doe"; and it is further

**ORDERED** that all copies of filings that are filed with Plaintiff's name are **SEALED**

and will remain under seal unless instructed by an order of the Court.

_____
Judge D.W. Tunnage
Sitting in Judge-in-Chambers

Copies to all parties.

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **JANE DOE,**<br>(individually and proceeding under pseudonym)<br><br>c/o John L. Pittman III, Esq.<br>925 B. St, Suite 604<br>San Diego, CA 92101<br><br>                    *Plaintiff*,<br>    v.<br><br><br>**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES,**<br>1625 L St NW,<br>Washington, DC 20036,<br><br><br><br><br>    *Serve on*: AFSCME<br>            1625 L Street, N.W.<br>            Washington, DC 20036-5687<br><br>        *Defendants.* | Case No.:        2025-CAB-005512<br>Judge:<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Jane Doe ("Plaintiff" or "Ms. Doe"), by undersigned counsel, brings this

Complaint against American Federation Of State, County and Municipal Employees ("Defendant"

or "AFSCME"), for violations of the District of Columbia Human Rights Act ("DCHRA"), D.C.

Code § 2-1401.01 et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et

seq.; and District of Columbia common law, including wrongful termination, retaliation, and intentional infliction of emotional distress. In support of these claims, Plaintiff states as follows:

## INTRODUCTION

1.      The American Federation of State, County and Municipal Employees (AFSCME), a national labor organization headquartered in Washington, D.C., promotes itself as a champion of workers' rights, equity, and accountability. Yet, within its own workplace, AFSCME has cultivated a culture rife with harassment, retaliation, and discrimination—particularly toward those who dare to speak out against abuse, even when the abuse originates from within its own union leadership.

2.      Jane Doe, a capable and high-performing employee hired on February 1, 2023, became the target of severe harassment and unlawful retaliation shortly after joining AFSCME. Despite her professionalism and early success in the role, Ms. Doe was subjected to sexual harassment by her union steward and another male colleague, only to face escalating retaliation when she reported the misconduct to her supervisor, Stephanie Hendrick, and later to Human Resources.

3.      Rather than protecting Ms. Doe and investigating her complaints in good faith, AFSCME's leadership enabled further abuse. Her supervisor engaged in public humiliation, unprovoked hostility, and exclusionary treatment, while HR Director Paula Caira subjected Ms. Doe to invasive and medically inappropriate demands in violation of the D.C. Family and Medical Leave Act and federal privacy laws. Despite providing proper medical documentation, Ms. Doe was forced to pay out of pocket for a forensic psychiatric evaluation in order to return to work.

4.      Upon her return, Ms. Doe was issued a retaliatory written reprimand for conduct long known to HR, excluded from collaborative workspaces on the basis of gender, and denied full wages without justification. When she sought clarification regarding her paycheck, she was met with obfuscation, hostility, and a continued refusal to provide basic documentation. Each of

these actions forms part of a concerted campaign of retaliation designed to punish Ms. Doe for exercising her legal rights and to force her out of the workplace.

5.    Ms. Doe brings this action to hold AFSCME accountable for its discriminatory and retaliatory conduct, its violations of the D.C. Human Rights Act, the D.C. Family and Medical Leave Act, and other applicable laws. She seeks redress for the professional, emotional, and financial harm she has suffered—and to ensure that no other employee is forced to endure the same treatment at the hands of an organization that claims to stand for justice.

## JURISDICTION AND VENUE

6.    This action arises under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 et seq., the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-501 et seq., and other applicable laws, including common law claims for invasion of privacy and constructive discharge. Plaintiff seeks redress for unlawful sexual harassment, gender discrimination, and retaliation for engaging in protected activity, including reporting misconduct, requesting medical leave, and opposing unlawful workplace practices.

7.    Venue is proper in this Court pursuant to D.C. Code § 11-921, as the events giving rise to this action occurred within the District of Columbia. Defendant AFSCME is headquartered in the District of Columbia, and Plaintiff was employed and subjected to the discriminatory, retaliatory, and unlawful conduct alleged herein at Defendant's D.C. office.

## PARTIES

8.    Plaintiff Jane Doe ("Plaintiff") is a woman residing in Washington, D.C. At all relevant times, Plaintiff was employed by Defendant AFSCME International in its Washington, D.C. headquarters, where she performed her duties and was subjected to the discriminatory, retaliatory, and unlawful conduct described herein.

9.    Defendant American Federation of State, County and Municipal Employees ("AFSCME" or "Defendant") is a national labor organization headquartered in Washington,

D.C. At all times relevant to this Complaint, Defendant employed more than 500 employees and was subject to the anti-discrimination, anti-retaliation, and medical leave protections provided by the District of Columbia Human Rights Act ("DCHRA"), the District of Columbia Family and Medical Leave Act ("DCFMLA"), and other applicable laws.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment and Early Performance at AFSCME

10.    Plaintiff Jane Doe was hired by the American Federation of State, County and Municipal Employees ("AFSCME") on February 1, 2023, as a full-time employee assigned to Defendant's national headquarters in Washington, D.C. Her salary was $92,000 per year.

11.    During the first months of her employment, Plaintiff performed her duties diligently and received exclusively positive feedback, both written and verbal. She maintained a collegial relationship with her direct supervisor at the time, Nathan Hoffman, and later with Stephanie Hendrick, who became her direct supervisor in May 2023.

12.    Plaintiff's work record was unblemished, and there were no complaints or performance issues until after she engaged in protected activity by reporting workplace misconduct.

### B. Sexual Harassment by Union Steward and Colleague in Violation of DCHRA

13.    Beginning in May 2023, while still in her probationary period, Plaintiff was subjected to persistent and unwelcome sexual harassment by her assigned union steward, Nate Sears, and another male colleague, Luke He. The harassment included inappropriate comments and conduct that interfered with her ability to perform her job.

14.    Sexual harassment constitutes a form of sex-based discrimination prohibited under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11(a)(1). Employers have an affirmative duty under DCHRA to maintain a workplace free from sexual harassment and to take prompt and effective remedial action upon learning of such conduct.

15.     Plaintiff informally reported the harassment in July 2023 to her then-supervisor Stephanie Hendrick and another director during a meeting. Although both individuals acknowledged the seriousness of Plaintiff's complaint, they failed to initiate an investigation or take corrective action as required by law.

16.     Instead, the harassment persisted, and no meaningful intervention occurred. When Plaintiff raised the issue again in August 2023—this time formally and after the end of her probationary period—Ms. Hendrick's response shifted from indifference to hostility.

**C. Retaliation for Engaging in Protected Activity in Violation of DCHRA**

17.     Following her protected report of harassment, Plaintiff's supervisor, Ms. Hendrick, began to retaliate against her. Retaliation included sudden negative feedback, verbal outbursts in front of coworkers, excessive scrutiny, and exclusion from workplace activities.

18.     These acts constitute unlawful retaliation under D.C. Code § 2-1402.61, which prohibits employers from retaliating against an employee for opposing practices made unlawful under the DCHRA or for participating in protected activities such as reporting harassment.

19.     Despite Plaintiff's prior record of positive performance, her working conditions materially worsened after she reported the misconduct, ultimately amounting to a retaliatory hostile work environment.

**D. Hostile Work Environment**

20.     As the retaliation escalated, Plaintiff was subjected to unwarranted criticism, removed from collaborative workspaces, and treated differently from her male colleagues. For instance, while male team members were permitted to use the communal workspace to socialize and collaborate regardless of project status, Plaintiff was barred from doing so after engaging in protected activity.

21.     This discriminatory and retaliatory differential treatment—based on both her gender and her protected activity—contributed to a hostile work environment in violation of

DCHRA. The environment became so intolerable that it impaired Plaintiff's ability to carry out her job duties.

**E. Violations of Medical Privacy and the D.C. Family and Medical Leave Act**

22.     In response to escalating stress and mental distress caused by her working conditions, Plaintiff exercised her right to take protected medical leave under the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code § 32-507. She submitted proper medical certification from her treating provider, consistent with the statutory requirements.

23.     Despite this, Defendant—through HR Director Paula Caira—rejected her medical documentation and unlawfully demanded extensive and invasive records from prior mental health providers, including full consultation notes from providers Plaintiff was no longer seeing. Defendant also rejected valid FMLA documentation and refused to accept her medical clearance.

24.     DCFMLA requires only that an employee submit a certification from a healthcare provider. Defendant's insistence on broader disclosure of private medical information constitutes a violation of both the DCFMLA and the common law right to privacy.

25.     Ultimately, Plaintiff was forced to pay out of pocket for a forensic psychiatric evaluation to satisfy the employer's unlawful demands, under duress and threat of job loss.

**F. Retaliatory Discipline and Pretextual Reprimand**

26.     After returning from protected leave, Plaintiff was issued a written reprimand for allegedly recording a workplace conversation—an action that had occurred months prior and had already been known to Defendant without prior consequence.

27.     The timing and severity of the reprimand, issued only after Plaintiff's EEOC charge had been filed, evince retaliatory intent. Furthermore, the policy Defendant cited was not properly executed or distributed through standard onboarding processes such as DocuSign, and Plaintiff had not been informed that the conduct violated any active policy.

28.     The reprimand threatened Plaintiff with termination for any further infractions, setting the stage for pretextual termination. Plaintiff's internal union formally grieved the discipline as retaliatory and procedurally defective.

7

### G. Payroll Misconduct and Constructive Discharge

29.     Shortly thereafter, Plaintiff's paycheck was inexplicably reduced. Despite multiple requests, neither Payroll nor HR provided a written explanation or itemized breakdown. Defendant has not issued full pay stubs and instead attempted to justify the deductions through vague and inconsistent verbal statements.

30.     Defendant's conduct in deducting Plaintiff's salary to retroactively offset DC Paid Leave benefits—despite the fact that Plaintiff did not receive salary during that period—is improper, arbitrary, and retaliatory. These deductions are currently the subject of an internal grievance.

31.     The combination of discriminatory treatment, retaliation, privacy violations, hostile work environment, and financial harm has created conditions so intolerable that no reasonable person in Plaintiff's position could be expected to remain employed. Defendant's actions have effectively forced Plaintiff toward constructive discharge, in violation of D.C. common law and public policy.

### COUNT I
### Sexual Harassment in Violation of the D.C. Human Rights Act (DCHRA)
### (D.C. Code § 2-1402.11(a)(1))

32.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

33.     The District of Columbia Human Rights Act (DCHRA) prohibits discrimination in employment on the basis of sex, including sexual harassment, which is recognized as a form of unlawful sex discrimination. D.C. Code § 2-1402.11(a)(1); see *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874 (D.C. 2003). Sexual harassment under the DCHRA may manifest either as "quid pro quo" harassment or the creation of a hostile work environment. The latter occurs when unwelcome conduct based on sex is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

34.    Beginning in or around May 2023, while Plaintiff was still in her probationary period, she was subjected to persistent and unwanted conduct of a sexual nature by two male colleagues—her assigned union steward, Nate Sears, and another co-worker, Luke He. The conduct included inappropriate comments and behaviors that made Plaintiff feel uncomfortable, unsafe, and disrespected in the workplace. These actions were unwelcome, based on Plaintiff's sex, and severe enough to interfere with her ability to perform her job functions.

35.    Plaintiff made her first report of the harassment to her direct supervisor, Stephanie Hendrick, in July 2023, during a meeting that also included another director. While both individuals expressed apparent belief in Plaintiff's account, neither took any steps to investigate or address the conduct. Instead, the misconduct continued, unaddressed and uncorrected, in clear violation of AFSCME's duty under the DCHRA to provide a workplace free from sexual harassment and to take prompt remedial action once notified of misconduct.

36.    In August 2023, after Plaintiff had completed her probationary period, she again raised concerns with Ms. Hendrick. Rather than initiating an investigation or escalating the complaint to Human Resources, Ms. Hendrick responded with hostility. She began retaliating against Plaintiff by publicly yelling at her, offering sudden negative performance feedback in stark contrast to previous praise, and undermining her role and authority in the office.

37.    These facts establish that the harassment was not only unwelcome and based on Plaintiff's sex, but also that it was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment, and that Defendant knew—or should have known—of the conduct and failed to take timely, reasonable corrective action. An employer's liability for a hostile work environment arises where the employer either fails to respond to reported harassment or responds inadequately. *Lively*, 830 A.2d at 887.

38.    Further, the harasser in this case—Mr. Nate Sears—held the position of Plaintiff's union steward, giving him a position of influence and authority over Plaintiff's workplace conditions. This relationship supports imputation of liability to AFSCME. Moreover, the

9

repeated and credible reports made by Plaintiff to her supervisor and the lack of any remedial measures by Defendant satisfy the requirement that the employer had actual or constructive knowledge of the harassment.

39.     Defendant failed to investigate or discipline the perpetrators, and instead permitted a retaliatory campaign of exclusion and intimidation to be carried out against Plaintiff. The hostile environment was further compounded by Defendant's inaction, which emboldened the harassers and signaled institutional tolerance of the conduct.

40.     As a direct and proximate result of Defendant's failure to prevent and remedy the sexual harassment, Plaintiff suffered emotional distress, professional humiliation, damage to her reputation, and interference with her ability to perform her job. Defendant's conduct violated Plaintiff's rights under the DCHRA, which was enacted to secure freedom from discrimination and protect the dignity of individuals in the workplace. D.C. Code §§ 2-1402.11(a)(1), 2-1401.01.

41.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count I and award all appropriate relief, including compensatory damages, punitive damages, equitable relief, attorneys' fees, costs, and any other relief deemed just and proper.

**COUNT II**
**Retaliation in Violation of the D.C. Human Rights Act (DCHRA)**
**(D.C. Code § 2-1402.61)**

42.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

43.     The D.C. Human Rights Act prohibits employers from retaliating against employees for engaging in protected activities, including opposing discriminatory practices, reporting harassment, or participating in proceedings or investigations under the Act. D.C. Code § 2-1402.61. An employee establishes a prima facie case of retaliation by showing (1) that they engaged in a protected activity, (2) that they suffered a materially adverse action, and (3) that

there is a causal connection between the two. *See Lively v. Flexible Packaging Ass'n*, 830 A.2d

874, 889 (D.C. 2003).

44.    In this case, Plaintiff engaged in multiple protected activities under the DCHRA.

She first reported sexual harassment to her supervisor, Stephanie Hendrick, in July 2023, and

again more formally in August 2023, after her probationary period ended. Subsequently, the

matter was escalated to Human Resources by Nathan Hoffman. Plaintiff later filed a charge of

discrimination with the Equal Employment Opportunity Commission (EEOC), which constitutes

protected activity under the law.

45.    Shortly after each instance of protected activity, Plaintiff experienced a series of

adverse employment actions that were materially harmful and designed to deter further

opposition to the unlawful conduct. These actions included, but were not limited to:

- A sudden and severe shift in treatment by her supervisor, including public

  outbursts, humiliating reprimands, and aggressive micromanagement;

- A retaliatory written reprimand for conduct (i.e., workplace recording) known to

  HR months earlier but never previously addressed;

- Unjustified exclusion from the communal workplace area, while male colleagues

  retained full access to the same space for non-collaborative use;

- Increased scrutiny and reassignment of work tasks in a punitive manner;

- Reduction of Plaintiff's paycheck without explanation or justification, followed by

  evasive responses from Payroll and HR.

46.    The close temporal proximity between Plaintiff's protected activities and the

onset of these adverse actions—combined with the inconsistency, selectivity, and escalating

nature of the discipline—demonstrate a clear causal link between her opposition to harassment

and the employer's retaliatory conduct.

47.    Moreover, AFSCME's purported justifications for its actions are pretextual. For

example, the disciplinary action for recording a conversation was based on a policy that had not

11

been properly executed or communicated to Plaintiff. The reprimand was issued only after

Plaintiff filed with the EEOC and included language threatening her with termination for any

further "infractions," regardless of severity—language that is both chilling and punitive.

48.    These facts align with the legal principles articulated in *Schonauer v. DCR*

*Entertainment*, 79 Wn. App. 808, where the court found retaliation when an employee who

opposed harassment was subjected to escalating discipline and termination. Similarly, as

recognized in *Vasquez v. State*, 94 Wn. App. 976, retaliation may take the form of more subtle

adverse actions such as isolation, increased surveillance, and discriminatory application of

workplace policies—all of which are present in this case.

49.    Under the DCHRA, an adverse action need not be a termination to be actionable;

it is sufficient that the employer's conduct would dissuade a reasonable worker from making or

supporting a charge of discrimination. Here, the accumulation of punitive acts created precisely

that chilling effect.

50.    As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has

suffered reputational harm, emotional distress, anxiety, and a significant disruption in her

working conditions and financial security. Defendant's actions have violated the DCHRA's anti-

retaliation provisions and entitle Plaintiff to all remedies provided thereunder, including

compensatory and punitive damages, equitable relief, and attorneys' fees.

51.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in

her favor on Count II and award all appropriate relief, including damages, equitable remedies,

attorneys' fees, and such other relief as the Court deems just and proper.

## COUNT III
**Gender Discrimination in Violation of the D.C. Human Rights Act (DCHRA)**

**(D.C. Code § 2-1402.11(a)(1))**

52.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth

herein.

53.    The D.C. Human Rights Act prohibits employers from discriminating against individuals in the terms, conditions, or privileges of employment on the basis of sex. D.C. Code § 2-1402.11(a)(1). This protection extends to both overt and subtle forms of gender-based conduct, including policies, practices, and decisions that create unequal working conditions or subject employees to disparate treatment based on their sex. Gender discrimination need not involve sexual advances or explicitly sexual conduct to be actionable under the statute. *See Payne v. Children's Home Society*, 77 Wn. App. 507; *Estevez v. Faculty Club*, 129 Wn. App. 774.

54.    Plaintiff, the only woman on her team aside from her supervisor, was subjected to multiple adverse and discriminatory acts based on her gender. Among the most egregious examples, Defendant barred Plaintiff from using the communal workspace where her male colleagues regularly congregated and worked, even when they were not engaged in collaborative projects. Defendant justified this exclusion by claiming that the space was only for "joint co-working," a restriction that was applied only to Plaintiff. In contrast, her male coworkers were consistently permitted to use the space for personal and social purposes, including eating lunch and casual work, regardless of whether they were working on group tasks.

55.    This exclusion from shared work areas constitutes an adverse employment action under the DCHRA, as it materially altered Plaintiff's workplace experience, isolated her from team dynamics, and sent a clear message that she was not afforded the same privileges as her male peers. Such treatment negatively impacted Plaintiff's access to informal collaboration, professional visibility, and inclusion—core aspects of workplace participation and advancement.

56.    Additionally, Plaintiff was subjected to a pattern of disparate enforcement of workplace rules and disciplinary procedures. While her male colleagues were not disciplined for informal conduct, Plaintiff faced a formal reprimand and threats of termination for conduct that had not previously been enforced, such as workplace recordings—despite the employer's failure to implement or disseminate a fully executed policy on the matter.

57.    The DCHRA, like Title VII and similar laws including RCW 49.60.180, recognizes that gender discrimination includes not only acts of sexual harassment, but also decisions and behaviors rooted in sex-based stereotypes, double standards, or unequal treatment. The treatment Plaintiff experienced—being policed, isolated, and denied access to collaborative resources while male colleagues were not—constitutes precisely the kind of systemic and implicit bias the statute is designed to prevent.

58.    Furthermore, Plaintiff's exclusion from team settings, heightened surveillance, and selective discipline occurred in a workplace that had already demonstrated institutional tolerance for sexual harassment and gender-based retaliation. These facts underscore a broader culture of discrimination that materially affected Plaintiff's working conditions in violation of the DCHRA.

59.    As a direct and proximate result of Defendant's unlawful gender-based treatment, Plaintiff suffered emotional distress, professional harm, reputational damage, and degradation of her working conditions. Defendant's conduct constitutes unlawful gender discrimination under D.C. Code § 2-1402.11(a)(1), entitling Plaintiff to all available legal and equitable remedies.

60.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count III and award all appropriate relief, including compensatory and punitive damages, equitable remedies, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**COUNT IV**
**Hostile Work Environment in Violation of the D.C. Human Rights Act (DCHRA)**
**(D.C. Code § 2-1402.11(a)(1))**

61.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein. Under the D.C.

62.    Human Rights Act, it is unlawful for an employer to subject an employee to a hostile work environment based on a protected characteristic, including sex. A hostile work environment claim under the DCHRA requires a showing that (1) the employee was subjected to unwelcome conduct; (2) the conduct occurred because of the employee's membership in a protected class; (3) the conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment; and (4) the conduct is imputable to the employer. *See Clarke v. Office of Attorney General*, 133 Wn. App. 767; *Antonius v. King County*, 153 Wn.2d 256.

63.    Plaintiff was subjected to a continuous pattern of unwelcome, degrading, and retaliatory treatment in the workplace, beginning with sexual harassment by two male colleagues—one of whom, Nate Sears, was her assigned union steward—and extending through institutional inaction, supervisor hostility, retaliatory discipline, and exclusionary practices. These acts were based on Plaintiff's sex and protected activity, and they escalated after she reported the misconduct, satisfying both the first and second elements of a hostile work environment claim.

64.    The severity and pervasiveness of the conduct are undeniable. After reporting the harassment, Plaintiff's supervisor—Stephanie Hendrick—began engaging in public outbursts, undermined Plaintiff's work performance with abrupt and unwarranted criticism, and created an atmosphere of intimidation and exclusion. Plaintiff was removed from the communal workspace used by her male peers, further isolating her from essential professional interaction. Meanwhile, those same male coworkers were allowed to socialize and conduct work in the same space without restriction.

65.    Plaintiff was also disciplined for conduct (recording a conversation) that had previously been known to HR but never acted upon—until after her EEOC filing. The discipline not only lacked a basis in a properly executed policy but was written in an excessively punitive manner, explicitly warning that Plaintiff would face termination for any future minor issue, thereby creating an ongoing climate of fear and coercion.

66.    The frequency and cumulative nature of this treatment—spanning harassment, retaliatory discipline, exclusion, financial penalties, and invasion of medical privacy—materially altered the terms and conditions of Plaintiff's employment. As established in *Adams v. Able Bldg. Supply, Inc.*, 114 Wn. App. 291, and *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, the analysis must consider the totality of the circumstances. Here, the constant surveillance, targeted discipline, and social isolation experienced by Plaintiff far exceed mere offensive conduct; they created an objectively and subjectively abusive work environment.

67.    AFSCME is liable for this conduct because it was perpetrated and perpetuated by Plaintiff's direct supervisor, Ms. Hendrick, and other agents of the employer with managerial authority, including HR Director Paula Caira. The employer was repeatedly notified of the harassment and resulting retaliation, both informally and through official grievances, yet failed to take effective corrective action. Indeed, the employer's response actively compounded the harm. Under the DCHRA and cases like *Washington v. Boeing Co.*, 105 Wn. App. 1, employer liability is established where the employer fails to remedy known misconduct or where the harassers occupy positions of authority, as they did here.

68.    As a direct and proximate result of Defendant's creation and perpetuation of a hostile work environment, Plaintiff suffered psychological trauma, professional setbacks, reputational damage, and the constructive diminishment of her employment position. The environment created by Defendant was abusive, gender-driven, and retaliatory, violating the DCHRA and depriving Plaintiff of her right to a safe and equitable workplace.

69.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count IV and award all appropriate relief, including compensatory and punitive damages, equitable remedies, attorneys' fees, costs, and any other relief the Court deems just and proper.

**COUNT V**
**Interference with and Retaliation for Use of Protected Leave in Violation of the D.C. Family and Medical Leave Act (DCFMLA)**
**(D.C. Code § 32-507 et seq.)**

70.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

71.     Under the D.C. The District of Columbia Family and Medical Leave Act ("DCFMLA"), codified at D.C. Code § 32-501 et seq., provides eligible employees the right to take up to sixteen (16) weeks of unpaid, job-protected medical leave during a 24-month period for their own serious health condition. The DCFMLA further prohibits employers from retaliating against employees for exercising their rights under the statute, including requesting or taking approved medical leave. *See* D.C. Code §§ 32-507(b)(1), (2).

72.     In or around the fall of 2023, Plaintiff exercised her protected right to medical leave under the DCFMLA due to severe stress and emotional distress stemming from ongoing harassment, retaliation, and a hostile work environment at AFSCME. Plaintiff obtained appropriate documentation from a licensed medical provider confirming the existence of a serious health condition and supporting her need for leave.

73.     Despite receiving timely and complete medical certification, Defendant—through its Human Resources Director, Paula Caira—refused to honor Plaintiff's documentation. Ms. Caira demanded access to confidential mental health notes from prior providers whom Plaintiff was no longer seeing and rejected Plaintiff's submitted FMLA form and return-to-work certification. These demands exceeded what is permitted under the DCFMLA and constituted interference with Plaintiff's right to take protected leave.

74.     Faced with threats of termination and being denied return to work without providing extensive and irrelevant private medical information, Plaintiff was forced to pay out-of-pocket for a forensic psychiatric evaluation in order to satisfy Defendant's unlawful demands. This burden was imposed solely as a consequence of Plaintiff exercising her right to protected leave, and not based on any legitimate or lawful basis.

75.     When Plaintiff ultimately returned to work, Defendant failed to restore her to a comparable position free from retaliation and discrimination. Instead, Defendant issued a formal written reprimand—based on conduct long known to HR but never previously addressed—and imposed severe disciplinary language warning of termination for any future issue, however minor. Defendant also restricted Plaintiff's access to shared workspace and subjected her to continued isolation and scrutiny.

76.     Such adverse treatment constitutes retaliation under the DCFMLA. Employers may not use the exercise of medical leave rights as a negative factor in employment decisions. *Espindola v. Apple King*, 6 Wn. App. 2d 244. Moreover, under the parallel federal FMLA, courts have held that failure to reinstate an employee to their prior or an equivalent position after medical leave is a per se violation. *Chaney v. Providence Health Care*, 176 Wn.2d 727.

77.     The actions taken by Defendant here mirror the same type of unlawful conduct. Rather than accommodate Plaintiff's lawful leave and facilitate her return to a supportive work environment, Defendant imposed retaliatory barriers, disciplinary threats, and invasive privacy violations—all of which undermined the protections guaranteed by the DCFMLA.

78.     As a direct and proximate result of Defendant's interference with Plaintiff's protected leave and retaliation for her lawful exercise of those rights, Plaintiff suffered financial hardship, emotional distress, and continued marginalization within the workplace. Defendant's conduct constitutes a clear violation of the DCFMLA, entitling Plaintiff to appropriate damages and equitable relief.

79.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count V and award all appropriate relief, including compensatory damages, statutory penalties, equitable remedies, attorneys' fees, costs, and any other relief the Court deems just and proper.

## COUNT VI
### Invasion of Privacy – Intrusion into Medical Privacy
### (Common Law – Restatement (Second) of Torts § 652D)

80.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

81.     The common law of the District of Columbia recognizes the tort of invasion of privacy, including the improper intrusion into or disclosure of an individual's private medical information. *See Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939 (D.C. 2003); *Restatement (Second) of Torts* § 652D. Under this tort, liability arises where a defendant (1) gives publicity to matters concerning the plaintiff's private life, (2) the matter publicized would be highly offensive to a reasonable person, and (3) the matter is not of legitimate public concern.

82.     This right to privacy, particularly in relation to medical and mental health information, is strongly protected under common law and supported by legislative policy favoring confidentiality. As in *Reid v. Pierce County*, 136 Wn.2d 195, and *Corbally v. Kennewick Sch. Dist.*, 94 Wn. App. 736, courts have consistently held that unauthorized access to or demands for private medical information can form the basis of an actionable claim.

83.     In or around fall 2023, Plaintiff submitted valid documentation from her licensed medical provider certifying her eligibility for medical leave under the D.C. Family and Medical Leave Act. Despite this, Defendant—acting through HR Director Paula Caira—refused to accept Plaintiff's documentation and instead demanded access to personal, sensitive mental health records from previous providers no longer treating her. These requests included:

- Personal clinical notes from prior mental health professionals;
- Contact with former providers for verification and questioning;

19

- A rejection of submitted FMLA documentation and medical clearance, despite their sufficiency under the law.

84.    When Plaintiff declined to waive her rights to confidential past records, Defendant informed her that she would be required to obtain a forensic psychiatric evaluation to return to work. These demands were not only invasive and medically unjustified, but were also punitive in nature—retaliatory, coercive, and designed to create barriers to her protected leave and return to employment.

85.    No legitimate business necessity or public concern justified the degree of intrusion requested. The information sought extended far beyond what is permitted under law and what is customarily required to verify fitness for duty. Defendant's conduct therefore constitutes an actionable intrusion into Plaintiff's protected sphere of medical privacy under the *Restatement (Second) of Torts* § 652D.

86.    Moreover, the requested disclosures would have been highly offensive to a reasonable person under similar circumstances. Mental health records—especially those from past, unrelated treatment—are among the most sensitive forms of personal information. Courts have recognized that forced disclosure of such records, particularly where not legally required, violates well-established privacy rights. *See Fisher v. Dep't of Health*, 125 Wn. App. 869; *Emeson v. Dep't of Corr.*, 194 Wn. App. 617.

87.    Plaintiff did not place her mental health history at issue beyond the limited scope necessary to secure protected leave under the DCFMLA. She never consented to disclosure of prior provider notes, and Defendant's refusal to accept her current treating physician's certification—and corresponding demand for irrelevant personal information—constitutes a coercive and unjustified intrusion.

88.    As a direct and proximate result of Defendant's unlawful and offensive intrusion into her private medical affairs, Plaintiff suffered emotional distress, anxiety, and humiliation.

She also incurred out-of-pocket expenses for an unnecessary forensic evaluation imposed solely as a condition for resuming her employment.

89.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count VI and award all appropriate relief, including compensatory and punitive damages, injunctive relief preventing further unlawful intrusions, attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT VII**
**Constructive Discharge**
**(Common Law Wrongful Termination / Violation of Public Policy)**

90.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

91.    Under the common law of the District of Columbia, an employee may assert a claim for constructive discharge when the employer, through deliberate actions, makes working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. *See Taylor v. FDIC*, 132 F.3d 753, 766 (D.C. Cir. 1997). Constructive discharge is treated as the functional equivalent of an involuntary termination and may support a wrongful discharge claim, particularly when grounded in retaliation, discrimination, or violations of public policy.

92.    The standard for constructive discharge is objective and focuses on whether a reasonable person in the plaintiff's position would have felt forced to resign in light of the employer's conduct. Courts in analogous jurisdictions—including *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, and *Wahl v. Dash Point Family Dental Clinic, Inc.*, 144 Wn. App. 34—have recognized that resignation prompted by intolerable and ongoing retaliatory or discriminatory treatment is actionable as constructive discharge.

93.    In the present case, Plaintiff was subjected to a continuous campaign of harassment, retaliation, and discriminatory treatment following her report of sexual harassment

and participation in protected activities under the D.C. Human Rights Act and the DCFMLA.

The following conditions, taken together, rendered Plaintiff's continued employment untenable:

- Sexual harassment by her union steward and a colleague, which Defendant failed to meaningfully investigate;

- Hostile retaliation by her supervisor, including public outbursts, sudden negative evaluations, and isolation;

- Unlawful intrusion into her medical privacy, including invasive demands for past mental health records unrelated to her current treatment;

- Retaliatory discipline based on policies that were not properly communicated or executed;

- Denial of full salary and failure to provide pay stubs or justification for unauthorized deductions;

- Exclusion from collaborative workspaces, while male colleagues were granted full access;

- Persistent surveillance and scrutiny, creating an atmosphere of intimidation and fear;

- Threats of future termination, documented in an unjustified written reprimand.

94.     These actions were not only deliberately imposed, but part of a pattern of escalating mistreatment designed to punish Plaintiff for engaging in protected activity and to coerce her resignation. Defendant's conduct created a working environment so objectively intolerable that no reasonable person in Plaintiff's position could be expected to endure it.

95.     Plaintiff actively sought relief through internal grievance processes, engaged her union despite its initial indifference, complied with burdensome HR demands, and endured retaliation upon returning from medical leave. Nonetheless, the conditions did not improve and in fact worsened, demonstrating that the employer either intended the outcome or acted with deliberate disregard for Plaintiff's well-being and legal rights.

96.     Constructive discharge is particularly appropriate where, as here, the Plaintiff alleges violations of anti-discrimination statutes and public policies enshrined in the DCHRA and DCFMLA. *See Sneed v. Barna*, 80 Wn. App. 843; *Washington v. Boeing Co.*, 105 Wn. App.

97.     As a direct and proximate result of Defendant's actions and omissions, Plaintiff was forced to leave her position, resulting in lost wages, loss of professional reputation, emotional distress, and the deprivation of a safe and equitable workplace.

98.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count VII and award all appropriate relief, including back pay, front pay, compensatory and punitive damages, attorneys' fees, and any other relief the Court deems just and proper.

## COUNT VIII
### Unlawful Wage Deductions and Failure to Pay Earned Wages
### (Violation of D.C. Wage Payment and Collection Law, D.C. Code § 32–1301 et seq.)

99.     Plaintiff re-alleges the foregoing paragraphs of this Complaint as if fully set forth herein.

100.    Under the D.C. Wage Payment and Collection Law (DCWPCL), an employer must pay an employee all earned wages on the regular payday designated for the pay period during which the wages were earned. *See* D.C. Code § 32–1302. The statute prohibits employers from withholding, diverting, or deducting wages unless such deductions are expressly authorized by law or by written agreement between the employer and employee. *See* D.C. Code § 32–1303.

101.    Defendant AFSCME, acting through its payroll and human resources departments, failed to pay Plaintiff all earned wages following her return from medical leave in or around December 2023. Specifically, Defendant unilaterally deducted substantial amounts from Plaintiff's paycheck without providing any prior notice, explanation, or documentation justifying the deductions. Despite repeated requests for itemized pay stubs and clarification, Defendant refused to provide a written account of the basis for these reductions.

102.    Plaintiff later learned, through informal conversations and with the assistance of a third-party accountant, that Defendant was attempting to retroactively deduct compensation received through D.C. Paid Leave—benefits that are funded independently by the District and not subject to recapture or offset by the employer. These deductions were not agreed to by Plaintiff, nor were they authorized by statute, policy, or contract.

103.    Such conduct constitutes an unlawful withholding of wages under D.C. Code § 32–1302 and a violation of the DCWPCL's prohibition on unauthorized deductions. Defendant's refusal to provide pay records and its evasive, inconsistent justifications for the missing wages further establish that these actions were taken knowingly and without legal justification.

104.    Courts have consistently emphasized that employers may not withhold earned wages unless authorized by law or written agreement, and that intentional nonpayment—even absent malicious intent—may give rise to civil liability, including liquidated damages equal to treble the amount unlawfully withheld. *See Jones v. District Parking Mgmt., Inc.*, 268 A.3d 883 (D.C. 2022).

105.    Plaintiff's wages were earned during active employment and were not subject to any valid offset. At no point did Plaintiff sign a written agreement authorizing wage deductions, nor did Defendant comply with any statutory exception allowing for such deductions.

106.    As a result of Defendant's unlawful conduct, Plaintiff was deprived of income necessary for basic living expenses and subjected to financial uncertainty, anxiety, and reputational harm. Defendant's failure to comply with clear statutory wage payment obligations entitles Plaintiff to compensatory and liquidated damages, as well as attorneys' fees and costs pursuant to D.C. Code § 32–1308.

107.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor on Count VIII and award all appropriate relief, including unpaid wages, treble damages, statutory penalties, pre-judgment interest, attorneys' fees, and any other relief the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe respectfully requests that this Court grant the

following relief:

A.    A declaratory judgment that:

a.    Defendant's conduct—including but not limited to sexual harassment, gender

discrimination, retaliation, exclusionary treatment, and the creation of a hostile work

environment—constitutes violations of the District of Columbia Human Rights Act

(DCHRA);

b.    Defendant's interference with and retaliation for Plaintiff's exercise of protected

rights under the District of Columbia Family and Medical Leave Act (DCFMLA) violates

D.C. Code § 32-507 et seq.;

c.    Defendant's unlawful demands for Plaintiff's private medical records and related

coercive conduct constituted an invasion of medical privacy under D.C. common law;

d.    Defendant's failure to pay all earned wages, unauthorized deductions from Plaintiff's

paycheck, and refusal to provide adequate documentation of those deductions constitute

violations of the D.C. Wage Payment and Collection Law (DCWPCL), D.C. Code § 32–

1301 et seq.;

e.    Defendant's actions created working conditions so intolerable that a reasonable

person would feel compelled to resign, thereby effecting a constructive discharge in

violation of public policy;

B.    An injunction against Defendant, enjoining it from further engaging in unlawful

retaliation, harassment, and discriminatory treatment, and requiring that it implement and

enforce effective anti-discrimination, anti-retaliation, and medical privacy protection

policies, including adequate training for supervisors and human resources personnel;

C.    An award of compensatory damages in an amount to be determined at trial for

Plaintiff's emotional distress, mental anguish, reputational harm, pain and suffering, and

loss of enjoyment of life resulting from Defendant's unlawful conduct;

D.    An award of back pay and lost employment benefits, including wages, paid leave,

retirement contributions, and other benefits lost as a result of the unlawful retaliation,

wage deductions, and constructive discharge;

E.    An award of front pay as deemed appropriate by the Court to compensate Plaintiff

for future lost earnings and the impact of Defendant's actions on her career trajectory;

F.    An award of punitive damages sufficient to punish Defendant for its willful and

malicious conduct and to deter future unlawful behavior;

G.    An award of treble damages, attorneys' fees, costs, and expenses incurred in

bringing this action, as authorized by the DCHRA, DCFMLA, and DCWPCL;

H.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: August 4, 2025

/s/ John L. Pittman III
John L. Pittman III, Esq., LLM2
Texas State Bar No. 24127922
New York State Bar No. 5880646
California State Bar No. PL482988
District of Columbia Bar No. 1742578
**JOHN L. PITTMAN III | ATTORNEY AT LAW, APC**
925 B Street, Suite 604
San Diego, CA 92101
Main Office: 833-575-4040 - Email: info@jp3law.com
Direct Office: 760-575-4040 - Fax: 877-575-5264
jlpittmaniii@jp3law.com
***COUNSEL FOR PLAINTIFF JANE DOE***

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
## INFORMATION SHEET

Jane Doe
_____
Plaintiff(s)

vs

American Federation Of State, County and Municipal Employees
_____
Defendant(s)

Case Number: _____ 2025-CAB-005512 _____

Date: 08-04-2025 _____

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* John L. PIttman III, Esq. | Relationship to Lawsuit |
|---|---|
| Firm Name: JOHN L. PITTMAN III \| ATTORNEY AT LAW, APC | ☑ Attorney for Plaintiff |
| Telephone No.: (760) 575-4040     DC Bar No.: 1742578 | ☐ Self (Pro Se)  ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury   ☐ 6 Person Jury   ☑ 12 Person Jury

Demand: $ 1,000,000.00 _____     Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____   Judge: _____   Calendar #: _____

Case No.: _____   Judge: _____   Calendar #: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☑ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement
☐ Ejectment
☐ Eminent Domain
☐ Interpleader
☐ Other
☐ Quiet Title
☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- [ ] Currency
- [ ] Other
- [ ] Real Property
- [ ] Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- [ ] Birth Certificate Amendment
- [ ] Death Certificate Amendment
- [ ] Gender Amendment
- [ ] Name Change

**TORT**
- [ ] Abuse of Process
- [ ] Assault/Battery
- [ ] Conversion
- [ ] False Arrest/Malicious Prosecution
- [ ] Libel/Slander/Defamation
- [ ] Personal Injury
- [ ] Toxic Mass
- [ ] Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- [ ] Accounting
- [ ] Deceit (Misrepresentation)
- [ ] Fraud
- [ ] Invasion of Privacy
- [ ] Lead Paint
- [ ] Legal Malpractice
- [ ] Motion/Application Regarding Arbitration Award
- [ ] Other - General Civil

- [ ] Product Liability
- [ ] Request for Liquidation
- [ ] Writ of Replevin
- [ ] Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- [ ] Asbestos

**MORTGAGE FORECLOSURE**
- [ ] Non-Residential
- [ ] Residential

**STATUTORY CLAIM**
- [ ] Anti – SLAPP
- [ ] Consumer Protection Act
- [ ] Exploitation of Vulnerable Adult
- [ ] Freedom of Information Act (FOIA)
- [ ] Other

**TAX SALE FORECLOSURE**
- [ ] Tax Sale Annual
- [ ] Tax Sale Bid Off

**VEHICLE**
- [ ] Personal Injury
- [ ] Property Damage

- [ ] **TRAFFIC ADJUDICATION APPEAL**
- [ ] **REQUEST FOR FOREIGN JUDGMENT**

_____
Filer/Attorney's Signature

08-04-2025
_____
Date

CV-496/February 2023