UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN FEDERATION OF STATE, )<br>COUNTY AND MUNICIPAL EMPLOYEES )<br>    Defendant. )<br>_____) | Civil Action No.: 1:25-cv-03985-SLS |

## **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Defendant American Federation of State, County and Municipal Employees ("AFSCME"), by and through its undersigned counsel, hereby files its Opposition to Plaintiff's Motion to Remand. As explained more fully below, long settled and well-established federal case law establishes that the motion to remand must be denied. Plaintiff's claims against her former employer are inextricably intertwined with the collective bargaining agreement ("CBA") between AFSCME and Plaintiff's Union – the United Staff Union ("USU"). This connection includes the policies and procedures set forth therein that speak to and govern AFSCME's alleged conduct that Plaintiff relies upon to bring her lawsuit against her former employer. (A true and correct copy of the CBA was attached to AFSCME's Notice of Removal as Exhibit C. An additional copy of this Exhibit C is attached hereto for the Court's convenience.)

In her motion to remand, Plaintiff does not deny that her terms and conditions of employment, including how, when and why AFSCME may terminate the employment relationship, are controlled by the CBA under which she worked. Importantly, the CBA contains a broad grievance and arbitration provision that specifically addresses precisely the disputes Plaintiff raises in her Complaint. Article 9 of the CBA provides that "a grievance shall be any controversy or dispute relating to any matter of wages, hours and working conditions or involving

1

interpretation or application of any provision of this Agreement. *See* Exhibit C, at Art. 9, Section 9.01. That contractual provision goes on to state that "[u]pon request of the employee, grievances concerning sexual harassment or race or gender discrimination shall be initiated at Step 3 of the grievance procedure." *Id*.

There is no doubt that Plaintiff was aware of the grievance/arbitration process contained in the CBA because she admits in her Complaint that she triggered this process. She states that the disciplinary reprimand issued by AFSCME concerning her work misconduct "threatened Plaintiff with termination for any further infractions, setting the stage for pretextual termination. Plaintiff's internal union **formally grieved the discipline as retaliatory and procedurally defective**." *See* Compl. ¶ 29 (emphasis supplied). Likewise, the payroll deductions made by AFSCME that Plaintiff relies on to support her claim of "payroll misconduct" and "constructive discharge" are also expressly covered under the CBA and, by Plaintiff's own admission, "currently the subject of **an internal grievance**." *Id*. at ¶30 (emphasis supplied).

Plaintiff also supports her claims of discrimination and disparate treatment against AFSCME by suggesting that "Plaintiff faced a formal reprimand and threats of termination for conduct that had not previously been enforced, such as workplace recordings – despite the employer's failure to implement or disseminate a fully executed policy on that matter. *Id*. at ¶56. Plaintiff further admits that AFSCME was "repeatedly notified of the harassment and resulting retaliation, both informally and **through official grievances** . . ." *Id*. at ¶ 68 (emphasis supplied). *See also*, ¶95 ("Plaintiff actively sought relief through the internal grievance processes . . .")

The above references throughout Plaintiff's Complaint belie her argument in seeking remand to state court that her claims against AFSCME "can be adjudicated without interpreting any CBA term." *See* Plaintiff's Motion to Remand, at 1-2. Similarly, her suggestion that the CBA,

which she has admittedly invoked **multiple** times in her employment dispute with AFSCME, only provides "background facts or a defense" is simply not true.

As explained below, the well-pleaded complaint rule does not overcome the situation presented to this Court under these facts. While Plaintiff's "artful pleading" seeks to cloak her claims against AFSCME in the garb of state law, resolution of these claims and their initial validity requires interpretation and application of a labor contract. As such Section 301 of the Labor Management Relations Act of 1947 ("LMRA") operates to completely preempt Plaintiff's state law claims which must be resolved through application of federal labor law.

## INTRODUCTION

Plaintiff, Jane Doe, a former employee of AFSCME, filed an eight-count Complaint on August 4, 2025. Specifically, Plaintiff's claims assert: (I) sexual harassment in violation of the D.C. Human Rights Act ("DCHRA"); (II) retaliation in violation of the DCHRA; (III) gender discrimination in violation of the DCHRA; (IV) hostile work environment in violation of the DCHRA; (V) violations of the D.C. Family and Medical Leave Act ("DCFMLA"); (VI) invasion of privacy in violation of common law; (VII) constructive discharge in violation of public policy; and (VIII) violations of the D.C. Wage Payment and Collection Law ("DCWPCL").

AFSCME addresses each of Plaintiff's counts in the order they are presented in her Complaint. When Plaintiff's claims are viewed in the context of the well-developed body of federal labor law it becomes evident that the principles behind this caselaw operate to completely preempt Plaintiff's claims and thus provides this Court with subject matter jurisdiction. This result is particularly warranted for Count VII (constructive discharge) and Count VIII (DCWPCL violation) which, standing alone, present particularly strong grounds for federal jurisdiction. Justification for discipline in a unionized employment environment virtually always requires

significant analysis of the terms of a CBA. Likewise, deciding whether pay deductions were authorized in a way compliant with state law necessarily requires interpretation of whether the employer's wage deduction policies were first authorized and consistent with CBA terms.

Plaintiff initially commenced this action in the Superior Court of the District of Columbia, Civil Division. AFSCME properly removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, because resolution of Plaintiff's claims necessarily requires the interpretation and application of the CBA governing Plaintiff's employment.

Under Section 301 of the LMRA, federal courts have jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). Regardless of how Plaintiff labels her claims, each of her claims turns on CBA-governed duties and processes, including those relating to discipline, discharge, leave, compensation, deductions, and AFSCME's grievance procedure.

Plaintiff now seeks remand on the grounds that her claims arise exclusively under District of Columbia statutes and common law. She argues that her claims do not require interpretation of the CBA and therefore raise no federal question. The opposite is true.

Remand is not appropriate because adjudicating Plaintiff's claims cannot be accomplished without interpreting and applying multiple provisions of the CBA which established the terms and conditions of Plaintiff's employment. Therefore, Section 301 of the LMRA completely preempts Plaintiff's claims. Accordingly, this Court, not the state court, is the appropriate forum to adjudicate this dispute.

## ARGUMENT

Plaintiff's motion to remand should be denied because Plaintiff's claims against AFSCME are preempted under § 301 of the LMRA. Section 301 of the LMRA establishes federal jurisdiction

over disputes involving collective bargaining agreements. 29 U.S.C. § 185(a). Congress enacted § 301 of the LMRA to ensure that federal labor law principles prevail over inconsistent state rules, thereby preserving nationwide consistency in the interpretation and enforcement of CBAs. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209-10 (1985).

State law claims that require interpretation of a collective bargaining agreement are preempted as a matter of law. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 (1988). Likewise, state law claims that are substantially dependent on the analysis of a CBA are also preempted. *Allis-Chalmers Corp.*, 471 U.S. at 220; see also *Electrical Workers v. Hechler*, 481 U.S. 851, 859 n. 3 (1987). By design, § 301's preemptive reach is so strong that it wholly displaces state law disputes involving violations of labor contracts, effectively supplanting any parallel state law cause of action. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 n. 9 (1987).  See also *Allis-Chalmers*, 471 U.S. at 211 ("Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law."); *Lance v. Greyhound Lines*, 244 F.Supp.3d 147, 157 (D.D.C. 2017), *citing Hechler*, 481 U.S. at 855 and *Allis-Chalmers*, 471 U.S. at 220.

In considering a motion to remand and making the preemption determination "it is the substance of plaintiff's claims, and not its characterization in the complaint, that controls." *See Williams v. Comcast Cablevision of New Haven*, 322 F. Supp. 2d 177, 182 (D. Conn. 2004).  In addition, in multi-count complaints, it is enough that one of Plaintiff's claims falls under the complete preemption doctrine to trigger the Court's supplemental jurisdiction when those other claims are "so related to claims in the action with the [Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *See* 28 U.S.C. § 1367; *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126

5

(2d Cir. 2003). *See also Bliss v. UPS*, No. 23-cv-47, 2023 U.S. Dist. LEXIS 121392, at *12 (D. Vt. July 14, 2023) (terminated employee's claims of retaliation and defamation against former employer and manager arise from the adverse employment action and thus are related to Plaintiff's employment with UPS and termination because they "share a common factual basis" and "are so related to the federal claim that it is appropriate for this Court to exercise supplemental jurisdiction . . . .")

    a. **Plaintiff's DCHRA Claims Must Be Addressed by Application and Interpretation of the CBA Through the Grievance and Arbitration Process and Are Therefore Completely Preempted Under § 301 of the LMRA (Counts I-IV)**

Plaintiff's DCHRA claims (Counts I-IV) are completely preempted under § 301 of the LMRA because their resolution requires application and interpretation of the CBA. It is undisputed that the CBA contemplates resolution of disputes involving sexual harassment (Count I), retaliation (Count II), gender discrimination (Count III), and hostile work environment based on sexual harassment and gender discrimination (Count IV) through use of the contractual grievance and arbitration process. Ex. C at Arts. 5, 8-9, 14, 16, 20, 23, 25, 28, and 29. Indeed, the labor contract specifically provides that "[u]pon request of the employee, grievances concerning sexual harassment or race or gender discrimination shall be initiated at Step 3 of the grievance procedure." *Id.* at Art. 9 Sec. 9.01.

In addition, Article 28 of the CBA creates precisely the obligations and requirements that Plaintiff claims AFSCME violated. Specifically, Article 28 states that "[n]o employee shall be subject to discriminatory harassment or retaliation." That contractual provision also requires AFSCME to "investigate and take appropriate disciplinary action up to and including discharge when an employee is subject to discriminatory harassment, including sexual harassment by a supervisor or other employee."

6

Here, Plaintiff claims, among other allegations, that she was discriminated against and retaliated against by AFSCME and harassed by members of AFSCME's supervisory staff. Such allegations fall squarely within AFSCME's obligations that the parties set out in Article 28 of their CBA. As such, Plaintiff's allegations of violations of this contractual article necessarily require application and interpretation of Article 28.

Counts I-IV thus fall directly under the ambit of the collective bargaining agreement. Plaintiff was undoubtedly aware of the role the CBA played in resolving her perceived employment disputes because she repeatedly admits in her Complaint to invoking the grievance process as detailed above. Plaintiff cannot now claim to be a stranger to the CBA and the application of the grievance process to her claims, merely to avoid this Court's jurisdiction.

Because the CBA specifically contemplates that employees will resolve harassment, retaliation and discrimination claims like those set forth by Plaintiff in Counts I-IV of the Complaint through the parties' agreed upon grievance process, her reliance on *Daniels v. Potomac Elec. Power Co.* 789 F. Supp. 2d 161 (D.D.C. 2011) is wholly misplaced. There, the Court granted remand only because the Plaintiff did not make any reference to the CBA or its grievance procedures in their complaint and the Defendant merely suggested that the parties may "reference" the CBA. *Id.* at 165. Here, Plaintiff's rights and remedies are substantially dependent on interpretation of the CBA terms. Much more than a passing reference to the CBA is required.

Instead, AFSCME and the USU clearly stated their intention to resolve employment disputes like Plaintiff's under the CBA and through the contractual grievance process, a process that necessarily requires hashing out competing interpretations of the controlling CBA provisions. *See Allis-Chalmers Corp.*, 471 U.S. at 210-11 ("questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that

agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.") For this reason, the force of Section 301's "complete preemption" applies to Plaintiff's claims against her former employer.

Not only does the CBA clearly set forth the parties' intent to resolve employment disputes like Plaintiff's through the grievance process and not by a mish-mash of state lawsuits, resolution of Plaintiff's specific allegations against AFSCME contained in Counts I-IV of her Complaint will require extensive reference, interpretation, and application of many provisions of the labor contract, including Articles 8, 9, 10, 14, 23, 25, 28, and 29 of the CBA. Article 8 sets the contractual standards for discipline, including progressive discipline procedures. Plaintiff's retaliation and related claims are wholly dependent on whether her discipline was permitted and/or excessive under the terms of the CBA. Defendant's actions cannot be proof of "pretext" as Plaintiff suggests in her Complaint. Compl. at ¶ 65, 93, without interpretation of those CBA terms.

As discussed above, Article 9 in the CBA establishes the grievance and arbitration process for disputes involving workplace conditions, discipline, and discrimination and provides that disputes like those involving Plaintiff be resolved through the process agreed to by AFSCME and Plaintiff's bargaining representative – the USU. *Id*. Article 10 regulates investigations and grievance related proceedings. *Id*. Article 14 governs transfers and assignments, including procedures and criteria for employer-initiated changes in duties. *Id*.

Article 23 dictates salary administration and pay-processing requirements. *Id*. Article 25 sets the rules for coordination of paid-leave benefits and permissible wage deductions. *Id*. Article 28 defines AFSCME's contractual duties to prevent, investigate, and remedy discriminatory and

sexual harassment. *Id*. Article 29 details management rights, including authority over assignment of duties and enforcement of work rules. *Id*.

All the above contractual provisions must be considered and applied in determining Plaintiff's claims against AFSCME, including her claim that AFSCME failed to investigate or discipline her purported "perpetrators" (*see* CBA Article 10 and Compl. at ¶¶ 38-39); reassigned work tasks for retaliatory reasons (*see* CBA Articles 14 and 29 and Complaint, at ¶ 45); improperly made wage deductions and failed to pay Plaintiff her earned wages (*see* CBA Article 25 and Complaint, at ¶¶ 100-102); unlawfully invaded her medical privacy based on the documentation it requested prior to allowing her to return to work after a medical leave (*see* CBA Article 29 and ¶¶ 83-87) and selectively punished her for disobeying an established work rule prohibiting the recording of workplace conversations (*see* CBA Articles 8 and 29 and Compl. at ¶¶ 56, 65 and 75.)

Because Counts I-IV are substantially dependent on interpreting the CBA and because the CBA specifically provides that employee disputes over such claims of harassment, discrimination and retaliation will be resolved through the contractual grievance/arbitration process, Plaintiff's claims against AFSCME are completely preempted under § 301 of the LMRA.

    **b. Plaintiff's DCFMLA Claims Require Interpretation of the CBA and are Therefore Completely Preempted Under § 301 of the LMRA (Count V)**

In her Motion to Remand, Plaintiff argues that her DCFMLA claims can be resolved solely under D.C. statutory standards and do not require interpretation of the CBA. This contention is not accurate. In Count V of her Complaint, Plaintiff alleges AFSCME interfered with and retaliated against Plaintiff for utilizing medical leave. Specifically, Plaintiff alleges that AFSCME refused to accept her medical documentation, demanded additional documents, and failed to restore her to a comparable position upon her return. Compl. ¶¶ 71-75.

As discussed above, any claims by an employee that AFSCME retaliated against them are resolved through the parties' contractual grievance and arbitration process. *See* CBA Article 28 (Harassment, Intimidation, Domestic Violence and Retaliation) and *supra* at 6-9. In addition, with respect to Plaintiff's allegations in Count V concerning medical leave, Articles 16, 20, and 25 of the CBA comprehensively regulate these very subjects.

Article 16 sets the FMLA-based eligibility criteria for medical and family leave. Article 20 establishes the mandatory written-request process, confidentiality rules, and an employee's right to be "return[ed] to the same or comparable position." Ex. C.

Notably, Plaintiff's allegation that AFSCME failed to "restore her to a comparable position" mirrors language and rights derived directly from Article 20 of the CBA—not the DCFMLA. Likewise, her claims that AFSCME demanded improper medical paperwork cannot be resolved without determining what documentation the CBA itself requires for leave approval, benefit eligibility, and return-to-work clearance.

Thus, like Counts I-IV, resolving Count V of Plaintiff's Complaint requires interpreting the CBA rather than simply applying statutory standards. The claims are therefore substantially dependent on the analysis of the CBA and completely preempted under § 301 of the LMRA. *Allis-Chalmers*, 471 U.S. at 220-21.

  c. **Plaintiff's Invasion of Privacy Claim Requires Interpretation of the CBA and is Therefore Completely Preempted Under § 301 of the LMRA (Count VI)**

Plaintiff's invasion of privacy claim is also completely preempted under Section 301 of the LMRA, as adjudicating that claim will require the Court to interpret the CBA. Count VI alleges that AFSCME refused to accept Plaintiff's medical documentation and requested alternative private documents such as clinical notes associated with her medical leave. Compl. ¶¶ 83-88. These allegations arise from the administration of Plaintiff's medical leave.

10

Articles 20 and 25 of the CBA outline medical leave requirements, and Article 29 defines the scope of AFSCME's management authority. Determining whether AFSCME could decline the documentation Plaintiff submitted, request additional verification, or condition her return to work on further medical information requires the Court to examine the scope of the employer's authority and the procedural requirements established in those provisions. Because resolution of Count VI depends on interpreting the CBA, the claim is substantially dependent on the CBA and is therefore preempted under § 301 of the LMRA.

### d. Plaintiff's Constructive Discharge Claim Requires Interpretation of the CBA and is Therefore Completely Preempted Under § 301 of the LMRA (Count VII)

Plaintiff's "constructive discharge" claim is similarly completely preempted under § 301 of the LMRA because its resolution requires interpretation of the CBA. Indeed, the bulleted list of factual allegations to support her claim of "constructive discharge" is precisely the type of conduct the parties to the CBA explicitly stated should be resolved by resort to the contractual grievance and arbitration process. *See* Compl. at ¶ 93 (allegations of harassment, retaliation, denial of full salary, and improper deductions to support "constructive discharge").

Like her other claims against her former employer, Plaintiff's "constructive discharge" theory rests on alleged misconduct that directly invokes the CBA. For example, assessment of her termination turns on Article 8, which governs progressive discipline and standards for discharge.

The additional allegations Plaintiff advances to support her "constructive discharge" theory similarly arise from rights and duties defined by the CBA. Her assertion that AFSCME failed to investigate her sexual harassment complaint invokes Article 28, which expressly outlines AFSCME's contractual obligations concerning workplace harassment investigations and remedial measures, and necessarily implicates Articles 9 and 10. Those contractual provisions govern

11

grievance processing, investigatory interviews, and the procedures for handling workplace misconduct allegations.

Plaintiff's retaliation allegations in support of her claim of "constructive discharge," including reductions in pay, exclusion from collaborative workspaces, increased scrutiny, reassignments of duties, and threats of termination, also cannot be resolved without consideration and application of the CBA. This consideration includes Article 8, which governs disciplinary standards, Articles 23 and 25, which regulate salary administration and pay deductions, and Articles 14 and 29, which outline management rights and the assignment of duties.

Plaintiff's hostile work environment allegations, which are based on surveillance, exclusion, baseless discipline, and failure to investigate harassment, similarly require interpretation of Articles 8, 9, and 28 to determine AFSCME's investigatory and remedial obligations and whether any disciplinary or grievance related actions complied with the CBA. Because each allegation supporting the "constructive discharge" claim depends on interpreting the CBA, this claim is preempted under § 301 of the LMRA.

e.  **Plaintiff's DCWPCL Wage Deduction Claim Requires Interpretation of the CBA and is Therefore Completely Preempted Under § 301 of the LMRA (Count VIII)**

In her Motion to Remand, Plaintiff argues that her DCWPCL claim can be resolved solely under D.C. statutory standards and does not require interpretation of the CBA. This contention is incorrect. This state law claim is also completely preempted because resolution of the claim is "substantially dependent" on the analysis of a CBA's terms. *Allis-Chalmers Corp.*, 471 U.S. at 220-21 (state tort preempted where duties and rights asserted rooted in the rights and obligations established by the contract and required interpretation of the CBA).

In Count VIII of her Complaint, Plaintiff alleges that Defendant AFSCME failed to pay Plaintiff her earned wages and unlawfully deducted wages in violation of D.C. Code § 32-1302.

Under DCWPCL, employers are prohibited from withholding wages unless expressly authorized by law or by a written agreement between the employer and employee. *Id.* at § 32-1303. Plaintiff acknowledges that employers may withhold wages **when authorized by written agreement**. Compl. ¶¶ 100, 104 (emphasis supplied).

Here, Plaintiff's own pleading makes "authorization by contract" an element of her theory. Specifically, Plaintiff alleges that Defendant was "retroactively deduct[ing] compensation received through D.C. Paid Leave." Compl. ¶ 102. Further, Plaintiff alleges that the deductions "were not agreed" on nor were they "authorized by . . . contract." Compl. ¶ 103. This contention necessarily invites and requires inquiry into the CBA. Article 23 of the CBA outlines pay periods and salary increases. *Id*. Moreover, Article 25 deals with the precise issue that Plaintiff and her union – the USU – raised with AFSCME prior to her termination. Article 25, Section 25.10 of the CBA provides:

> If an employee may be eligible for a paid leave benefit through a centralized fund created under federal, state or local laws, AFSCME may require the employee to apply for such benefit. If the employee is eligible, AFSCME may deduct the amount of the centralized fund benefit from any AFSCME paid leave benefit so that the total centralized fund/AFSCME benefit shall not exceed 100% of the employee's base salary.[1]

Crucially, Plaintiff invoked the CBA's grievance procedure to contest these very wage deductions. Compl. ¶ 30 ("These deductions are currently the subject of an internal grievance."). AFSCME responded through the internal grievance process. Specifically, AFSCME provided Plaintiff's Union (the USU) with a detailed memorandum explaining how its leave coordination policy was applied to Plaintiff's pay. *See* Caira Declaration at ¶ 8 and Exhibit C attached to the

---

[1] AFSCME maintains a policy concerning coordination of AFSCME paid leave and external governmental paid leave benefits. *See* Declaration of Paula Caira ("Caira Declaration") at ¶ 6 and Exhibit B attached to the Caira Declaration.

Caira Declaration. This back and forth is concrete evidence that the parties treated the "wage deduction" dispute as governed by the CBA, and that resolution of this dispute requires interpreting and applying the CBA.

Importantly, AFSCME also stated that it was willing to meet with the USU after the USU reviewed the coordination of benefits memorandum and attached documents to provide further explanation. *Id*. Plaintiff's grievance contesting the alleged deductions, and AFSCME's leave coordination memorandum provided to the USU in response, is substantial evidence that resolution of this pay dispute turns on the meaning and application of the CBA. This directly contradicts Plaintiff's position that the Court can adjudicate her DCWPCL claim without interpreting the CBA.

Plaintiff cites *Livadas v. Bradshaw*, 512 U.S. 107, 124-25 (1994), to support her position. The reasoning and holding in that case, however, is inapposite. In *Livadas*, the court held that a state wage-payment claim was not preempted because the CBA played no interpretive role. The parties in *Livadas* merely needed to reference the wage rate and the date by which the wages were required to be paid; no contractual clause had to be construed.

By contrast, here, the CBA explicitly creates and defines authorization for wage deductions under specified circumstances in Article 25 of the CBA, as well as AFSCME's coordination of benefits policy. Moreover, by submitting her claims initially through the CBA's grievance process, Plaintiff and her union understood that interpretation of the CBA covered her claims. The Court in this case must determine whether the facts alleged fit within the CBA's prescribed wage deduction authorization. Accordingly, *Livadas* does not apply, as this case requires interpreting the CBA, not just "referencing" it.

The reasoning here is straightforward. Plaintiff has alleged that Defendant unlawfully deducted wages without contractual authorization. The parties have already addressed this dispute under the process contemplated by the CBA - through the submission and processing of an internal grievance. Thus, there is simply no question that, in addressing Plaintiff's wage payment claim, the Court must construe the CBA (including the related coordination of benefits policy) to determine whether the alleged deductions were contractually authorized. *See also Allis-Chalmers*, 471 U.S. at 211 ("Questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law."). This situation is precisely when § 301 of the LMRA applies. Because the Court must interpret the CBA to adjudicate Plaintiff's DCWPCL claim, her claim is completely preempted. [2]

### f. Plaintiff's Pseudonym and Confidentiality Requests

AFSCME has filed its Response to Plaintiff's Motion to Proceed Under Pseudonym and to Seal Limited Materials, stating that it does not oppose pseudonymous proceedings and defers to the Court regarding confidentiality and docket management. By Minute Order dated January 8, 2026, the Court denied Plaintiff's sealing request without prejudice, and deferred ruling on

---

[2] AFSCME submits that, regardless of how the Court views her other claims, Plaintiff's "wage deduction" claim, along with her "constructive discharge" claim and the bullet point list to support that claim effectively encapsulates her employment claims against her former employer – all of which arise under, relate to and can be traced back to the CBA under which she worked. As such, these claims alone provide the Court with subject matter jurisdiction and allow the Court to exercise its supplemental jurisdiction to address Plaintiff's other causes of action.

As previously discussed, in multi-count complaints, it is enough that one of Plaintiff's claims falls under the complete preemption doctrine to trigger the Court's supplemental jurisdiction when those other claims are "so related to claims in the action with the [Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367; *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 338 F.3d 119, 126 (2d Cir. 2003). *See also Bliss v. UPS*, No. 23-cv-47, 2023 U.S. Dist. LEXIS 121392, at *12 (D. Vt. July 14, 2023) (terminated employee's claims of retaliation and defamation against former employer and manager arise from the adverse employment action and thus are related to Plaintiff's employment with UPS and termination because they "share a common factual basis" and "are so related to the federal claim that it is appropriate for this Court to exercise supplemental jurisdiction . . . .")

pseudonymity pending resolution of the Motion to Remand. AFSCME maintains its non-opposition and will defer to the Court's directives.

### g. Plaintiff's Request for Attorneys' Fees and Costs Under 28 U.S.C. § 1447(c)

Plaintiff's request for attorneys' fees and costs under 28 U.S.C. § 1447(c) should be denied. Even if the Court grants Plaintiff's motion to remand, Defendant's removal would still rest on an objectively reasonable, good-faith basis, grounded in the factual record and the governing § 301 preemption framework. Fees are unwarranted where the removal is supported by a colorable legal theory advanced to protect federal interests and not for purposes of delay or harassment. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). Defendant's arguments are reasoned, supported by authority, and presented in a principled manner; accordingly, there is no basis to award fees or costs in connection with the removal.

### CONCLUSION

For the foregoing reasons, and the reasons stated in Defendant's Notice of Removal, Defendant AFSCME respectfully requests that Plaintiff's Motion to Remand be denied with prejudice.

Respectfully submitted,

*Mark J. Murphy*
_____
Mark J. Murphy
Khadeja Tipu
MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.
1620 Eye Street, NW, STE 700
Washington, DC 20006
mmurphy@mooneygreen.com
ktipu@mooneygreen.com
*Attorneys for Defendant*


**CERTIFICATE OF SERVICE**

I certify that on this 15th day of January, 2026, a true and correct copy of the foregoing Defendant's Opposition to Plaintiff's Motion to Remand was served through the Court's ECF/PACER electronic filing platform upon:

John L. Pittman III, Esq., LLM2
John L. Pittman III | Attorney at Law, APC
925 B Street, Suite 604
San Diego, CA 92101
jlpittmaniii@jp3law.com

*Mark J. Murphy*
Mark J. Murphy